Morning, may it please the Court, my name is Eric Stanley and I represent the Appellant Tree of Life Christian Schools. I'd like to reserve five minutes for rebuttal. You may. This Court should reverse the District Court for two reasons. First, the District Court adopted an exceedingly narrow standard for deciding a RLUIPA Equal Terms Provision case. And secondly, the City of Upper Arlington violated RLUIPA Equal Terms Provision by treating Tree of Life on less than equal terms with other secular institutions that were permitted uses in the ORC Zoning District. In regard to the test that the District Court adopted, the District Court held that the only valid comparator to a Christian school was a secular school, and that that's where the analysis started and ended. But the District Court's decision failed to heed the broad mandate that RLUIPA itself says, which is that, quote, The U.S. Supreme Court just affirmed this broad construction in the Burwell v. Hobby Lobby case just recently. No other court has construed RLUIPA as narrowly as the District Court did here. In fact, the two cases it cited did not so narrowly construe it. The Irshad Learning Center case the District Court relied upon heavily not only compared the religious school in that case to a secular school, but also to a daycare, which is exactly what we're doing in this case. And yes, so in the end, yes, a secular school is a comparator under RLUIPA's Equal Terms Provision, but it's only one among many. You also have to look at other uses that are allowed as permitted uses. And that fits with the standard that this court should follow for deciding a RLUIPA Equal Terms case, which is the standard announced by the Fifth Circuit in the Opulent Life case. That's the most recent RLUIPA Equal Terms case from the circuit courts. It looked at all the other tests that were out there. It did decide, as many other courts have done, that there was no functional difference between the tests. But in that respect, the court said, and very clearly stated, the court must determine first the regulatory purpose or zoning criterion behind the regulation at issue as stated explicitly in the text of the ordinance or regulation. And second, whether the religious assembly or institution is treated as well as every other non-religious assembly or institution that is similarly situated with respect to the stated purpose or criterion. So it's a two-step inquiry. When you say stated purpose here, in the briefings they state a purpose of tax revenue and high-priced jobs and things of that sort. If the regulation were actually written that way, that is, this is zoned for at least a million dollar payroll per acre or at least 48 employees per acre, would you then have any case here if you didn't meet those standards? Well, I think that would be a much harder case for sure. The problem is the regulation is not written in that sense. It's not even close to that. The city does state, and explicitly in the ordinance itself in the ORC zoning district, the city's expressed purpose for that district is to, quote, contribute to the city's economic stability. And even the city's 30B6 expert, who was its senior planning officer, testified that the ORC district was to have tax revenue generating uses. So really tax revenue generation is the standard explicitly stated in the ordinance, and the city's relied upon that all along throughout this litigation. The problem is that, if you look at it under any set of the facts, Tree of Life does in fact generate revenue for the city in the income taxes its employees pay to the city, in the sales taxes that people who come to visit the school, eat at restaurants, those kinds of things. But the bigger problem is that the revenue generation standard is not really a standard at all. It's an amorphous standard. The city doesn't say with any precision what that standard means. It can really mean whatever the city wants it to mean. We don't really even know what it means. And that's why courts have held, in RLUIPA cases, in the substantial burden prong context of the case, that revenue generation is not a compelling interest. In fact, in the Cottonwood case, which the Ninth Circuit cited in the International Church of the Four Square Gospel case, in that case the building there had sat vacant for 12 years, not produced any revenue for the city. And the city was doing fine. And so the court said, well, that can't be a compelling interest for revenue generation. The same is true here. This building's been vacant for almost 10 years, at which time the city has really had very little or no revenue from this property. And the city's own finance officer and experts testified that the city's been fine. That in the three categories of income tax revenue generation, that they've either remained stable or have increased in the intervening time periods. Councilman, when you've asked for these variances or conditional use permits and not gotten them, is there record evidence of other people who did not meet the master plan and the original zoning asking for conditional use permits or variances within this area? Not in the ORC zoning district. There's no evidence in the record of that. And what about outside it? Is there anything there as well? No. And, Your Honor, the reason is because this building itself was the former world headquarters for America Online, a very large building. And there were a couple of suitors who had come to the building, but nobody had applied. Potentially at least other pieces of property in this area, right? This building is not the whole 67 acres. Okay. That's correct. There's also discussion about, well, there's 95% of the city is zoned residential, and I guess there's an implication or a statement that schools would be a residential use. Is there any indication that, like, if you decided to level a city block and build a 254,000 square foot school, would that require new permission? Well, it would not require zoning permission in the terms that the zoning code does say that in residential use or in residential zones, schools are a permitted use. The problem with this case is that Tree of Life had over a two-year search for property, didn't find any that met its criteria. And it really sidesteps the issue in this case, which is the city points to the 95% and says, well, they can go anywhere in the city, 95%, but it sidesteps the issue. The city says, look over here, but ignore the unequal treatment over here in the ORC zoning district. And that's really what's at issue here is the fact that in the ORC zoning district, the city has allowed secular institutional uses that undercut its stated interest in revenue generation to the same degree or greater than Tree of Life would. Well, what are those uses? Those uses are daycares. They are charitable hospitals and charitable office uses. Even the city's own experts testified that those uses would not be considered primary tax revenue generators for the city. Are they allowed to consider any other zoning concerns? Or if they're not written down, they can't be considered? I think that even, well, I'll say it in two ways. First, that's why the Fifth Circuit enunciated the test that it did, because there has been discomfort in the courts of allowing kind of post hoc justifications to come into the record after the fact, and the city's saying, well, now this is an issue and this is an issue and this is an issue. So the city really has to stick by what is stated in the ordinance. But in this case, even if the court were inclined to go there and to say, well, sure, we'll look at traffic and noise, which are really the two issues that the city has raised in this case. They've attempted to raise those after the fact. Even if the court were to go there, the uses that were allowed or that are allowed as permitted in the ORC zoning district are undercut that interest to the same degree or greater than Tree of Life would. This is a very large piece of property. It's a very large building. It invites intensive use. The city's zoning code says that a hospital could locate on this property with hundreds of patients, hundreds of visitors coming and going, ambulances coming in and out, helicopters landing. It's sort of an indication that you'd be full of rowdy teenagers in hospitals. Patients don't tend to congregate and smoke marijuana and that sort of thing. Well, and certainly those are not legitimate zoning concerns for the city. I mean, there's no way that the city could say that a hospital with ambulances coming and going, potentially helicopters landing and delivering patients would be less disruptive to the city than Tree of Life would, especially considering the nature of the property. It's a very large building. It's on a main thoroughfare of the city, and it invites this kind of intensive use. It's not like Tree of Life was going to go into the residential area and raise an entire block and build a huge building. That building is there. It's empty. It's just a matter of who's going to use it. And AOL was using it for years with hundreds of workers coming and going on a daily basis. Tree of Life's use would not be anywhere near as intensive as that. And that highlights the unequal treatment in this case, is that under any of the zoning criteria, certainly we believe this court should look at the stated zoning criteria of revenue generation, but even if the court were inclined to look at the other zoning criteria, under any of those the city has treated Tree of Life on less than equal terms with other uses that are permitted that would have been allowed to go into that zone without having to obtain any permission from the city whatsoever. And that's unequal treatment under RLUIPA. In that respect, this case is very similar to the other court cases, Opulent Life, Elijah Group, Central Familiar, where those courts have held the same way. I reserve my remaining time for rebuttal. Thank you, counsel.  May it please the court, I'm here for the city, which is trying to do the right thing both for the law and for its citizens. I think both of you are trying to do the right thing. But I will concede. I'll so stipulate. Here's the way that the city went about it, and I thought I might pick it up from where this case was last at this court and what happened thereafter. When we were last at this court with a different panel, a plaintiff took the unusual position that the as-applied challenge should not be ruled upon at all, but that we should receive a ruling only on the facial challenge. The last panel in its decision called that a questionable position, I think because the actual text of the ordinance says that all schools, whether religious or non-religious, would not be allowed use in this area. Giving plaintiff the benefit then of what they didn't ask for, they were remanded to the district court to sort out whether or not exhaustion had occurred for an as-applied challenge, which seems to be what we're actually really talking about today. And here's what happened. At last, the plaintiff did in fact exhaust the as-applied challenge. They did in fact ask for a zoning change in the 16-acre parcel. But what they chose was to ask it to be thrown into the residential category. We have, as you've stated Judge Boggs, we've had 95% residential, we have 5% commercial. They wanted to take the very last jewel of economic engine in this landlocked suburb and turn it into more residential land. There would be no requirement that a school actually be built or stay there. They could knock down the building and build more houses, which we weren't really looking for. It also had the very odd outcome that the use that's being done there now, it's now used for a data center. If they'd gotten their way and made it more residential land in the city, that would have been a non-conforming use. Your adversary said the building's been vacant. Are you saying it's not vacant, it's being used as a data center? That's right. The record shows that Tree of Life has rented out part of it for a data center, and the data center is paying Tree of Life and is pretty much covering the rent. So it's being used in some sense, but not nearly what the city would prefer. The city hasn't been able to get anything more preferable for tenure? Well, Tree of Life has owned it since 2009, and we've been here and back and down ever since. We would very much enjoy having Tree of Life as a school in the 95% of the city in which we have schools. You asked is there a comparator. There are very good comparators. We have two Catholic schools, K-8 in Upper Arlington, St. Agatha and St. Andrews. We have, of course, a plethora of public schools. We also have a K-12 private school that's non-religious. All these are located in residential districts and are serving proudly and have for years. I'm a little confused by your argument. Are you saying that we should not look at the zoning and ask the questions? Instead, we should look at the decision denying the request to rezone it as residential? Exactly, as to the as-applied challenge. I think you can do a facial challenge without looking at that. I think the facial challenge, you look at the ordinance, which says all schools are prohibited, and schools and schools are, by their very definition, equal terms. So I think that's why the last panel found difficulty with the plaintiff's request to find a facial infirmity here. We have all schools, whether religious or not. Does your success depend on using all schools as the comparator? Not necessarily. It would not be determinative. It's certainly the best comparator, a school and a school. The other districts, the other circuits, have struggled with the concept of what do we compare a church to? There is, by definition, no such thing as a non-religious church. So they've worked mightily to add words to the statute to try to help them understand how would we compare a church use with a non-church use, a non-religious church use. So they ask themselves, what about Lodges? What about the Eagles Hall? What about Hyatt? Those things. You don't have to do that here. Does your argument then mean that if, as a matter of fact or practice, there is no secular school that wants to go into this district, that then you can do anything you want to? You can say, heck, we just don't like these people, but there's no comparator so we can do anything we want to to them. We have comparators for whether or not we've allowed schools, both religious and non-religious, to locate in the city. There's very little office and research land in this particular area. Certainly. It sounds like as a logical matter, at least, that's the implication of your position. If you have to have a school comparator, then until a secular school wants to come in, you're home free for keeping them out. Well, some courts have actually done that, and that would be a legitimate position. I would advocate something different. I think that we should keep both of our eyes open to view the scene. Plaintiff has said you should only look at other uses that are permitted in this area. If we're trying to understand the concept of zoning criteria, if we're trying to understand regulatory purpose, why don't we look at what's permitted and not permitted? Why don't we look at the entire field? Why don't we look at what the history has been in this city? Because we have these other school uses, both religious and non-religious, as we very early on suggested that they take that position and try to get that kind of zoning or try to find that kind of land, that that's the way that we are fair to this particular use. The question for example with the charitable offices, the reason you say charitable is they wouldn't pay property taxes, but the offices, there's no limitation on how intense they would be. That's correct. Are there other instances where people have sought variances or conditional use in this area? In other words, in a lot of places you have a master plan that makes everything illegal, so everybody has to come in for a conditional use. Is there anything in the record or in the public history of conditional uses being sought in this area? No, I don't believe so. There was a conditional use sought for this building by this plaintiff. It was held by the court not to have been a sufficient exhaustion of an as-applied challenge. Is that why they had to ask to rezone it then? That's correct. Because you were sort of making it sound like they came in to make it residential, but you're saying they really tried with the conditional use and it wasn't good enough. Well, Exhibit A of Record 1 is the city telling them how to go about an exhaustion of an as-applied challenge. That was given to them in 2009, and they were told that because this is zoned for office and research and a school is not a permitted use, they would need to rezone that area of land. Instead, they came in and said, we're a church, which is a conditional use in this area, again showing our friendliness to religion, but clearly the use that they're doing is a school use. The record shows that... Maybe I'm not a very good zoning attorney, which is probably the case, but in a lot of places you would simply say, you'd call it a variance, and you'd say, okay, look, given this kind of building and this kind of location, we're really not so bad. Please let us come in. I presume if that had been worked out, they wouldn't have any problem. I'm just trying to focus on the procedural problem you've raised as opposed to the substantive problem. Certainly, and here's what it is. You have three flavors of use in every zoning district. You have forbidden, where it's not listed at all. You have conditional, and you have permitted. If it's permitted, come on in. It's just a question of making sure your permits are right. If it's conditional, then you can ask permission, and that sounds like the variance you're talking of. Variance just means, look, yeah, I don't fit, but here's good reasons to vary it. In a lot of cities, my impression is that's the way things operate. That's not the way they operate in Upper Arlington. If it's not permitted, you need to get it rezoned. If it's conditional, you have to ask for it. I think I've got the procedure. They initially said treat us like a church for conditional use. Is there a reason, other than not having thought of it, that you didn't go the way we were talking about in terms of number of jobs, amount of payroll, things of that sort, where your adversary indicated that if that's really what they want, we'd have a lot harder time fighting it? He didn't concede completely, but he indicated that if they did it that way, then we would know it was on the up and up. Well, it's called Office and Research District, and so there are a list of what kinds of things the master plan from 2001 indicated ought to be there, and there are things like outpatient surgery centers, and there are things like intensive office uses. In 2001, when it was written, the building was full. The building was, in fact, being used for that, and the master plan said, Upper Arlington, whatever else you do, you have so much residential land. You have to preserve and increase your commercial uses within your landlocked area. The jewel, the biggest 29% of the income tax that year, was from this building. So what we've had happen is we have plaintiffs buy a building without, speaking of zoning attorney, without having a condition on the purchase of the land to make sure it's zoned for what they want to use it for, come and try to use RLUIPA as a sword, not a shield, and at knife point, sack the remaining jewel of economic intensity in our city. In land use cases, it's always a sword because the people who raise it are always people that aren't being permitted to do something, and they want to do it. RLUIPA, though, is really designed to be a shield from government action that's not otherwise allowed. We're here on equal terms. There's a facial challenge, and there's an as-applied challenge. The facial challenge loses because schools are schools, and that's what the ordinance says. The as-applied challenge, here's what I wanted you to think about, please, and that is because this was sent back to exhaust, and exhausted since the remand, you look at what happened at the remand. That's when the as-applied challenge became ripe. When the as-applied challenge became ripe, there were no daycares allowed in the zoning. That was taken out well before that. The Seventh Circuit indicates that there is... That's certainly correct. Dwight, I think I cut you off. Did you have a question? I do, but go ahead. Let's talk about the purposes. Yes. The purposes it stated were economic. Yes. There were other objections as well. Okay. Now explain how this would be different from the other permitted uses according to that criteria. Sure. The city... Well, the actual proposed use was to take the 150 employees that they have spread out in other places where they're practicing their religion and in business currently, take 150 people and put them in an office building of a quarter of a million square feet. That would be one for every 1,700 square feet. That's basically a house. The intensity of income tax revenue available at that location would basically be a house. Even if you have the same number of, let's say, charitable office workers who all pay income tax, even if you have the same number as the 600 students and the 150 people, you still have 600 more income tax workers. Say that again? Even if you what? Well, let's say you have 1 in 10 teachers to students. Okay. Students don't pay income tax. Okay. So you're going to fill up the building with a bunch of non-income taxpayers. The difference between an office and a school is everybody in the office is working and paying income tax. That's assuming that there's X, that they're not all in big corner offices, they're in cubicles or something. Sure. And is it fair to believe that somebody would buy this building for an office building without needing the space that they're buying? You're not going to get any more than 150, probably less in an ambulatory surgical. Well, we think they get paid more than teachers and janitors. Maybe they shouldn't. The large percentage of employees would be nurses, LPNs, and aides. Surgeons may come and go. They may do a surgery here. So they're not big revenue producers. They would be taxed while they worked in our city. Right. As I understand it. But I'm saying the vast majority probably wouldn't be any more than a teacher. I guess your question raises this point. Does it have to be a certainty that the city would make more money with this kind of use? That seemed to be your response. And the plaintiff has said that. The plaintiff has said these are all dreams. Plaintiff dreams of a daycare that covers a half million square feet, too. So is it reasonable in planning in 2001 for the city to say we're more likely to preserve our revenue generation if we have an office than if we have a school or if we have an outpatient surgery center? And recall, this is a very small piece of what we have in our city. And this is 20% of this particular kind of office and research. I'm just trying to respond to your response. Thank you. But here's what I would say about that. If the city is acting reasonably in taking on the application of this plaintiff and would have handled that plaintiff whether it was a religious use or not, then the plaintiff fails in an as-applied challenge. Their logic requires them to write in their brief something that says, literally, that comparing it to a non-religious school is irrelevant. That indicates the faultiness of their logic. I'm out of time. I would hope that plaintiff would be able to tell you why it is that they bought a religious school without having it properly zoned before they bought it, or bought it for a religious school without having it zoned at all for a school, and why it is that they think that comparing it to a non-religious school would be irrelevant. Thank you. But let me just reprise the conversation we had a little while ago. The logical import of making that determinative is that they must lose until there's a secular school that wants to come in, no matter what your motivations really are. I think that plaintiff has the burden of proving their case. I think that if plaintiff can show some other comparator, and you asked, is there anything else on the record, the only thing on the record is that there are religious schools serving proudly in the city. Okay. Thank you. Thank you. Let me address the RLUIPA burden standard, because plaintiff does not have the burden of proving the city's purposes here. RLUIPA itself states that it does have a burden-shifting provision, and in the Opulent Life case, the Fifth Circuit recognized this as well. When an unequal terms provision claim is raised and a plaintiff makes the prima facie showing, the burden shifts to the government to bear the burden of persuasion on every element of the RLUIPA claim. So it's the city's burden to come in and to say, we have this overriding interest in revenue generation, and we've pursued it equally across the board. And Judge White, in response to your question, you asked how would this be different. How would Tree of Life be different than the other permitted uses? And I don't think council gave a satisfactory answer, specifically because they can't. This wouldn't be different than other permitted uses. Tree of Life's use, under any of the accepted zoning criterion that are either stated in the code or that the city has raised here, is treated on less than equal terms with other uses permitted in the ORC zoning district. With respect to the revenue generation, though, we've made arguments about how well it might not do as well, but maybe this is like the case we had just before this, the triumph of hope over experience, is that they would hope to get really high-paying, lots of people in there. And so it's not that it couldn't be, but they're kind of betting on the hope. I think that's right. I think conceivably revenue generation could be an interest if the city were to pursue it uniformly. But in this case, they certainly haven't. And I'll point out that there really has been no court that has relied upon revenue generation in either the substantial burden context or the RLUIPA equal terms context that has used that as the overriding consideration, other than perhaps maybe the River of Life opinion out of the Seventh Circuit, which is different in that the city did not have, it was a church and they were comparing them to clubs and lodges, the city didn't have any assembly uses allowed in that zone whatsoever. And so that might be a little bit of a different case. Here the city, though, has not pursued this uniformly. It's treated Tree of Life on less than equal terms with other uses that undercut its revenue generation interest. When you say that it's treated them, a lot of this discussion has been kind of hypothetical. That is, would we allow a daycare? Would we allow a hospital? Would we allow a charitable? But they haven't actually done that, so how can you say that they treated them? Not in a specific, in relation to Hillcrest Daycare or whatever. But the zoning code itself does say, as a permitted use, that a daycare, a charitable hospital, or a charitable office use could go into that zone as a permitted use. If Tree of Life were a daycare... So that's on less than equal terms with your religious school, but albeit also on less than equal terms with other schools. That's right. That's right. But I do think, and it's not that other schools are irrelevant, it's just that it sidesteps the whole question of RLUIPA, which is, is there unequal treatment in this zoning district, not in some other zoning district, not in 95% of the city, where, incidentally, the facts of this case say there was no land. The Tree of Life didn't find anything that would be available to it. But is there unequal treatment in this zone? And there is. That's what the city has done here. And in respect, there's not necessarily a particular applicant we can point to, but there is the zoning code. If Tree of Life were a daycare, it would be able to come right into the ORC zoning district and the city would... Are we allowed to look at the reality of what differentiates these supposed similar uses? I mean, you don't see daycare... A daycare, you're talking about younger children and the teacher-to-student ratio or the staff-to-student ratio is going to be completely different than a daycare. You're going to have many, many, many more adults for each student. That's number one. Number two is you don't see daycares of that size. Daycares, generally, it's like a small space and there are a certain number of kids and that's it. And as far as the hospitals, I mean, they've told you why a hospital is different. So you don't want to be compared strictly to a school. You want to be compared to these other places, but what's wrong with their explanations for why you're different? Well, what's wrong with their explanations for why we're different is that the explanations don't make sense. If you look at daycares specifically, we presented evidence and it's in our affidavit in support of our motion for preliminary injunction to the district court. It's undisputed that there are daycares of over 1,000 children that exist and that those daycares could move straight into that building and they wouldn't have to obtain zoning approval. They would be a permitted use. In regard to the student-to-staff ratio, those types of considerations, even the city's own zoning experts testify that a daycare for all relevant purposes under the zoning code would be the same as a school. And really what we're looking at here is what are the relevant purposes for zoning? It's not that one business or one use might have high school students versus another use that has maybe preschool students. The city is allowed to look at things like what they say in the zoning code, which is revenue generation. That's what their primary purpose here. They may be able to look at traffic. They may be able to look at compatibility with the surrounding area. But when you take any of those considerations and you stack Tree of Life up against charitable hospitals, charitable daycares, and charitable office uses, and not even charitable daycares, just daycares, Tree of Life is similarly situated with respect to any of those zoning rights. But what about all the outside uses that come along with any school? Those outside uses being sports and things of that nature? Sports, bands. The city's zoning expert testified that daycares have playgrounds and that children go outside. Again, I think it ignores the reality of what this property is. It's a 16-acre piece of property. It's a 228,000-square-foot building. It invites intensive usage by anybody who's going to go into that facility, including daycares, including hospitals. A Tree of Life school would be no more disruptive to the surrounding area than a hospital would, with ambulances coming and going on an hourly basis. The idea that somehow Tree of Life is somewhat different and the children playing outside or band practice might disrupt the neighborhood, it ignores the practical realities of what's going on here. You stack any of the zoning criteria up that the city has said, and Tree of Life is treated on less than equal terms. Last question, or at least from me, is there under any argumentation anything for trial here, or do we just have to say equal terms, not equal terms? We don't believe there's anything for trial here. This was submitted on the stipulated facts by council, and there's really no disputes. Neither the city nor us have pointed to any material disputes in the facts. Except at least we've spent most of our time speculating about facts about band and helicopters and ambulances and practices and things of that sort. I will say if the court wishes to send it back for trial, I would accept that as opposed to a loss. Same answer as last case. The council said something about the daycare is no longer part of the picture on remand. Well, the city did remove daycare. That's not right. And the council's argument in respect to you only have to look at the rezoning that happened on remand is not correct. This case became ripe way back when, when the first CUP was denied, not upon the rezoning. And this court, in the earlier panel opinion, never held that the case was not ripe. It just simply said, well, you've applied for rezoning, so go back and let the district court figure it out. That's all that the panel thinks. CUP is conditional use? Conditional use permit, yes, sir. Anything else? Thank you, counsel. Okay, thank you. The court will take a brief recess and return shortly.